1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KURT K ROBINSON, | Case No.: 12-CV-00494-RMW |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE |
| v. | |
| BANK OF AMERICA, individually and doing business as BANK OF AMERICA HOME LOAN SERVICING; RECONTRUST, COUNTRYWIDE BANK, | **[Re Docket No. 5]** |
| Defendant. | |

Plaintiff Kurt Robinson ("plaintiff"), proceeding *pro se*, filed the instant action alleging claims related to the foreclosure of residential property in Fremont, California. Defendants Bank of America ("BA"), Countrywide Bank ("Countrywide"), and ReconTrust Company, N.A. ("Recontrust") (collectively "defendants") move to dismiss for failure to state a claim. Defendants also move to strike plaintiff's request for punitive damages. The court has heard the arguments of the parties and considered the papers submitted in support of the motion. For the reasons set forth below, the court grants in part and denies in part defendants' motion to dismiss, and denies the motion to strike.

## I.   BACKGROUND

On January 22, 1988, plaintiff purchased residential property located at 4681 Deadwood Drive in Fremont, California (the "subject property"). *See* Compl. ¶ 51. On January 6, 2005, plaintiff refinanced the loan on the subject property through Countrywide, executing a Deed of Trust that named "America's Wholesale Lender" as lender, "CTC Real Estate Services" as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary. *See id.*; Compl. Ex. A. The Deed of Trust obligated plaintiff to make periodic and gradually escalating mortgage payments to the lender, including principal, interest and certain "Escrow Items" such as taxes and insurance premiums. *See id*.

As is common today, plaintiff's mortgage eventually changed hands. At some point between June 3, 2009 and June 3, 2010, BA allegedly "took over" Countrywide's Home Loan portfolio. Compl. ¶ 33. Countrywide customers, including plaintiff, began to "use [BA] customer service resources … receive mortgage statements from [BA], make their mortgage payments to [BA], and apply to [BA] if they wish[ed] to modify their mortgages." *Id*. In addition, on April 1, 2010, MERS executed an assignment of plaintiff's Deed of Trust naming Recontrust as trustee and "The Bank of New York Mellon FKA the Bank of New York as Trustee for the Benefit of the Certificateholders of CWABS 2005-01, Inc." as beneficiary. Dkt. No. 6-1 (RJN) Ex. B.[1]

By the spring of 2010, plaintiff's monthly mortgage payment was $2,531. *Id.* ¶ 52. He requested a loan modification, and received a response from BA asking for certain financial documentation. *Id.* On April 2, 2010, plaintiff and BA entered into a loan modification agreement (the "modification agreement"). *See* Compl. Ex. B. The modification agreement indicated that it "amend[ed] and supplement[ed]" the original Deed of Trust. *Id*. Under a subheading titled "Amount of Borrower's Initial Scheduled Monthly Payments," the agreement provided that "as of May 1, 2010, the scheduled monthly payment will be in the amount of U.S. $1,906.09. The

---

[1]    Pursuant to defendants' request, the court takes judicial notice of the following documents: (1) the Deed of Trust, recorded on January 14, 2005; (2) the Substitution of Trustee, recorded on April 9, 2010; and (3) the Notice of Default, recorded on August 3, 2011. *See e.g.*, *Western Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (courts may take judicial notice of publicly recorded documents, including deeds of trust and court filings).

Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE
EDM

scheduled monthly payment may change on that day of every twelfth month thereafter …" (the "modified monthly payment") *Id.* The agreement further noted that plaintiff's interest rate would escalate from 5.25% in 2011 to 6.125% in 2013. *Id.* While the circumstances under which the modification agreement was executed are not clear, plaintiff alleges that as of May 5, 2010, he had not received a signed copy of the contract or any Truth in Lending notices despite repeated requests to BA for such materials. Compl. ¶ 54.

On August 1, 2010, plaintiff attempted to make his modified monthly payment, but BA refused to accept it, and indicated there was no record of a loan modification on file. *Id.* ¶ 57. BA then sent plaintiff an invoice demanding monthly payments ranging from $3,748.39 to $6,766.84. *Id.* Plaintiff attempted to contact BA by phone but received no response. *Id.* For the next several months, plaintiff tried in vain to make payments of approximately $1,900. *Id.* ¶ 58. In December 2010, BA finally accepted a payment, and informed plaintiff by phone that the "modification was showing and that there had been a mistake." *Id.* However, from January 15, 2011 through May 15, 2011, every time plaintiff attempted to make a payment he was told that the BA system had a "problem" that prevented BA from accepting any payment under the amount of $3,748.39. *Id.* ¶ 59.

In May 2011, BA returned plaintiff's December 2010 payment without explanation. *Id.* Later that month, plaintiff had a phone conversation with a BA representative during which the bank conceded that it had "unilaterally changed the terms of the modification agreement" without informing plaintiff and suggested that it could approve a "new modification amount at $2,500." Compl. Ex. E. On May 19, 2011, plaintiff sent a letter to BA's loan modification denial department chronicling this conversation, and in late July, BA invited plaintiff to attend a loan assistance event on August 18, 2011 in San Francisco. *See id*; Compl. Ex. H.

On August 3, 2011, more than two weeks before the plaintiff's scheduled meeting with BA, Recontrust recorded a Notice of Default indicating that plaintiff had not made a loan payment since July 2010 and was $48,776.45 in arrears. *See* Dkt. No. 6 (RJN) Ex. B. The notice was accompanied by a declaration from a BA Mortgage Servicing Specialist stating that BA had "tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5." *Id.*

3

On August 18, 2011, plaintiff attended BA's loan assistance event. After waiting for seven hours, he was told by a BA representative that the bank would "research" issues related to its refusal to accept his modified monthly payments. *Id.* ¶ 60.

On August 30, 2011, plaintiff sent Reconstrust a letter indicating that he "intended to dispute the debt" allegedly owed under the Deed of Trust. Compl. Ex. J. On September 19, 2011, Recontrust representative Wendy McKnight replied, noting that plaintiff's correspondence had been forwarded to BA for "review and response." Compl. Ex. K. Recontrust subsequently "put the debt on [plaintiff's] credit report without … obtaining verification [from BA]." Compl. ¶ 62.

At some point during the fall of 2011, Recontrust issued a Notice of Trustee's sale indicating that a foreclosure sale of the subject property would take place on December 2, 2011. Compl. Ex. I. On October 4, 2011, BA Litigation Coordinator Nina Hernandez notified plaintiff by letter that "the concerns addressed in your correspondence require further detailed analysis. We will respond to your request after we have completed our investigation." Compl. ¶ 63. On November 20, 2011, plaintiff spoke to Ms. Hernandez by phone and was informed that "no research had been done" and that "only Recontrust could stop the sale or accept a full tender." Compl. ¶ 63. The same day, plaintiff spoke to Recontrust and was told to contact BA concerning the foreclosure. Compl. ¶ 64. Between November 22 and 29, 2011, plaintiff attempted four times to contact Cindy Gary, his personal loan manager at BA, but received no response. *Id.* Thereafter, he again spoke to Ms. Hernandez, who indicated that she would attempt to postpone the sale. *Id.* Plaintiff alleges that Ms. Hernandez made "no effort" to delay foreclosure, but at oral argument, he indicated that BA has postponed the sale of the subject property on a month-to-month basis since November 2011 and that he is still living in his home.

Plaintiff filed the instant action on November 29, 2011 in Alameda County Superior Court. *See* Dkt. No. 1. Defendants removed the matter to this court on February 1, 2012. *See* Dkt. No. 1.

Plaintiff's complaint asserts causes of action for: (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, (3) Fraud, (4) Intentional Misrepresentation, (5) Negligence, (6) Violation of Cal. Civil Code § 2923.5, (7) Violation of Cal. Bus. & Prof. Code §

4

17200, (8) Violation of § 1788.17 of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), (9) Accounting, (10) Violation of the Truth in Lending Act ("TILA"), (11) Declaratory Relief, (12) Wrongful Foreclosure, (13) to Void or Cancel Assignment of the Deed of Trust, and (14) Promissory Estoppel. Plaintiff alleges that as a result of defendants' conduct, he has lost equity in his home, and that his credit rating has been "damaged or destroyed." Compl. ¶ 50. He seeks compensatory damages, punitive damages, damages for emotional distress and injunctive relief preventing foreclosure of the subject property.

## II. DISCUSSION

### 1. Tender Rule

As a threshold matter, defendants argue that plaintiff is barred from seeking injunctive relief because he failed to plead his ability to tender the debt owed under the Deed of Trust. The "tender rule" generally applies in an action to set aside a trustee's sale for procedural irregularities or alleged deficiencies in the sale notice. *Tamburri v. Suntrust Mortg., Inc.*, No. 11-02899, 2011 WL 6294472, *3 (N.D. Cal. Dec. 15, 2011). "[T]he rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." *Id.* (quoting *Cohn v. Bank of America*, No. 10-00865, 2011 WL 98840, at *9 (E.D. Cal. Jan.12, 2011)). However, the tender rule is not absolute. "Tender may not be required where it would be inequitable to do so." *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (Cal Ct. App. 1997). In addition, several federal courts in this circuit have held that the tender rule only applies in cases seeking to set aside a completed sale, rather than an action to prevent a pending sale. *See, e.g.*, *Vissuet v. Indymac Mortg. Serv.*, No. 09-2321, 2010 WL 1031013, at *2 (S.D. Cal. Mar. 19, 2010) ("Where a party has the right to avoid a sale, he is not bound to tender any payment in redemption."); *Giannini v. American Home Mortg. Servicing, Inc.*, No. 11-04489 TEH, 2012 WL 298254, at *3 (N.D. Cal. Feb. 1, 2012) ("While it is sensible to require tender following a flawed sale—where irregularities in the sale are harmless unless the borrower has made full tender—to do so prior to sale, where any harm may yet be preventable, is not."). Moreover, tender may not be required where a plaintiff alleges a violation of Cal. Civ. Code

5

1    § 2923.5, because "[t]he whole point of section 2923.5 is to create a new, even if limited right, to

2    be contacted about the possibility of *alternatives* to full payment of arrearages. It would be

3    contradictory to thwart the very operation of the statute if enforcement were predicated on full

4    tender." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 225 (Cal. Ct. App. 2010) (emphasis

5    added).

6           Here, as in *Vissuet* and *Giannini*, there has been no sale of the subject property.

7    Furthermore, plaintiff's allegations do not suggest mere "irregularities" in the foreclosure process,

8    but rather that defendants failed to comply with their fundamental obligations to accept plaintiff's

9    mortgage payments under the modification agreement. Moreover, plaintiff has asserted a claim

10   under Cal. Civ. Code § 2923.5, alleging that BA failed to properly explore options to avoid

11   foreclosure before recording a notice of default. Finally, plaintiff asserts that he did offer to "pay

12   the entire note or sell other assets to pay the lender," but that such offers were refused. Compl. ¶

13   63. This suggests that even if the tender rule were applicable, its requirements would be met here.

14   Under these circumstances, it would clearly be inequitable to apply the tender rule to bar plaintiff's

15   claims. The court therefore rejects defendants' tender rule argument.

16   **2.    Breach of Contract (First Cause of Action)**

17          **A.  Breach of the modification agreement**

18          Plaintiff alleges that BA breached the modification agreement by refusing to accept his

19   monthly payments of $1,906.09 and initiating foreclosure proceedings despite his effort to properly

20   tender payment. In California, a claim for breach of contract requires a plaintiff to establish: (1) a

21   contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

22   damage to plaintiffs. *See Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171,

23   1178 (Cal. Ct. App. 2009). Defendants do not dispute the validity of the modification agreement,

24   but instead argue that plaintiff has failed to perform under the contract. Specifically, defendants

25   contend that the modification agreement did not eliminate the requirement under the Deed of Trust

26   that plaintiff pay for "Escrow Items." Defendants assert that such expenses, which include taxes

27   and insurance premiums, account for the difference between the approximately $1,900 per month

28

**United States District Court**
For the Northern District of California

6

plaintiff believed he owed and the more than $3,700 per month claimed by BA. Because plaintiff only attempted to tender the lesser amount, defendants contend that he did not meet his contractual obligations.

Under California law, a contract must be interpreted in a manner that gives effect to the mutual intent of the parties if that intent can be ascertained. Cal. Civ.Code § 1636. "Ambiguities in contractual language are construed against the drafter." *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986). A motion to dismiss a claim for breach of contract should not be granted where the contract "leaves doubt as to the parties' intent." *Id*; V*elazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008).

The court finds that at best, the modification agreement is ambiguous as to the amount of plaintiff's mortgage payments. Under a subsection titled "Amount of Borrower's Initial Scheduled Monthly Payments," the agreement states: "as of May 1, 2010, the scheduled monthly payment will be in the amount of U.S. $1,906.09. The scheduled monthly payment may change on that day of every twelfth month thereafter …" Compl. Ex. B at ¶ 3. On its face, this language clearly suggests that the *entire* monthly payment owed by plaintiff during the first year following the modification would be $1,906.09. Defendants point to paragraph 9 of the agreement, which states: "Except as otherwise specifically provided in this Agreement, the Note and Security instrument remain unchanged …" *Id.* ¶ 9. According to defendants, this language demonstrates that the Deed of Trust's Escrow Items provision survived the modification. However, as the modification agreement does not indicate that the "scheduled monthly payment" of $1906.09 includes only principal and interest or make *any* reference to Escrow Items, paragraph 9 creates an ambiguity which must be construed in favor of plaintiff. *Consul Ltd.*, 802 F.2d at 1149. Further, the court is dubious that plaintiff would have knowingly agreed to pay more than $3,700 per month when he claims to have requested a loan modification while his monthly payments were $2,531. *See* Compl. ¶ 52. Indeed, defendants practically concede that the modification agreement itself does not address the Escrow Items provision by noting that "should plaintiff's claim … survive, [they] intend to introduce into evidence documents evincing numerous conversations between [the parties] in

7

United States District Court
For the Northern District of California

which plaintiff was explicitly told his loan modification did not include Escrow Items…." Dkt. No.
5 at 8 n. 1. Such "evidence" is not included in the complaint or otherwise before the court, and thus
cannot be the basis for granting a motion to dismiss. The court therefore finds that plaintiff has met
his burden to state a claim for breach of the modification agreement.

### B.  Breach of the Servicer Participation Agreement under the HAMP

As an alternative theory, plaintiff appears to allege that defendants breached a contractual
obligation to modify his loan arising from their acceptance of funds under the federal Home
Affordable Modification Program ("HAMP"). Compl. ¶ 82-82. This assertion is somewhat
baffling, as plaintiff's primary breach of contract claim is premised entirely on the notion that
defendants did modify his loan. Furthermore, numerous courts have held that HAMP does not
create a private right of action or allow an individual to sue under a third-party beneficiary theory.
*See, e,g.*, *Phipps v. Wells Fargo Bank, N.A.*, No. 10-2025, 2011 WL 302803, at *8 (E.D. Cal. Jan.
27, 2011); *Hoffman v. Bank of America, N.A.*, No. 10-2171 SI, 2010 WL 2635773, at *3 (N.D. Cal.
June 30, 2010) (collecting cases). Accordingly, to the extent that plaintiff's breach of contract
claim is based on obligations allegedly arising under HAMP, it is dismissed with prejudice.

### 3.  Breach of the Implied Covenant of Good Faith and Fair Dealing (Second Cause of Action)

Plaintiff also asserts a breach of the implied covenant of good faith and fair dealing claim,
alleging that defendants' refusal to accept payments interfered with his intended benefits under the
contract. To support a claim for breach of the implied covenant, the allegations:

> Must show that the conduct of the defendant, whether or not it also constitutes a breach of a
> consensual contract term, demonstrates a failure or refusal to discharge contractual
> responsibilities, prompted not by an honest mistake, bad judgment or negligence but
> rather by a conscious and deliberate act, which unfairly frustrates the agreed common
> purposes and disappoints the reasonable expectations of the other party thereby depriving
> that party of the benefits of the agreement.

*Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990).
"If the allegations do not go beyond the statement of a mere contract breach and, relying on the
same alleged acts, simply seek the same damages or other relief already claimed in a companion

8

contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* Here, plaintiff does not allege any facts in support of his claim beyond BA's failure to properly apply the monthly payments as required by the modification agreement. *See* Compl. ¶ 86-91. Thus, plaintiff's claim for breach of the implied covenant is dismissed as superfluous. As plaintiff may be able to state a claim that is not duplicative of his express contract claim, dismissal is with leave to amend.

### 4.   Fraud & Intentional Misrepresentation (Third and Fourth Causes of Action)

Plaintiff alleges two distinct categories of fraudulent conduct by defendants: (1) misrepresentations made in 2005 by Countrywide regarding the origination of his loan; and (2) misrepresentations made in 2011 by BA and Recontrust indicating that the subject property would not be foreclosed upon while the issues surrounding the modification agreement were "being reviewed and investigated." Compl. ¶ 94. Defendants argue, and plaintiff does not dispute, that any claims based upon the origination of the loan are time-barred under California's three-year statute of limitations for fraud. *See* Cal. Code Civ. Proc § 338(d). The court therefore grants defendants motion to dismiss plaintiff's third and fourth causes of action insofar as they arise from the origination of plaintiff's loan.

Defendants contend that plaintiff's more recent allegations of fraud must be dismissed as "vague" and "conclusory." Dkt. No. 5 at 12. The elements of fraud are: "a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." *Gil v. Bank of America, N.A.*, 138 Cal. App. 4th 1371, 1381 (Cal. Ct. App. 2006). Where fraud is alleged against a corporate entity, the complaint must contain: (1) the name of the person who made the misrepresentation; (2) the person's authority to speak for the corporation; (3) to whom the person communicated; (4) what was said or written; and (5) when the communication occurred. *Tarmann v. State Farm Mutual Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (Cal. Ct. App. 1991). Similarly, "where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."

Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE
EDM

1     *Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004); *see also Swartz v. KPMG*, 476 F.3d 756, 764 (9th

2     Cir. 2007).

3        Plaintiff points to three incidents in support of his fraud-based claims: (1) the statement by

4     Wendy McKnight of Recontrust indicating that plaintiff's correspondence would be forwarded to

5     BA for "review and response;" (2) the statement by Nina Hernandez of BA indicating that she

6     would research issues regarding the modification agreement and attempt to postpone the initiation

7     of foreclosure proceedings; and (3) Cindy Gary's failure to respond to plaintiff's phone calls. *See*

8     Compl. ¶¶ 62-64. The court finds that the first and third claims fail because plaintiff has not shown

9     that they constitute actionable misrepresentations; the second fails because plaintiff does not allege

10     that he relied on Ms. Hernandez' statement to his detriment.

11        Although plaintiff claims that Ms. McKnight's statement was false, his allegations show

12     that she did as *she* promised; Nina Hernandez's October 4, 2011 letter to plaintiff appears to have

13     been initiated in response to an inquiry from Recontrust. The fact that BA did not adequately

14     review plaintiff's claim does not render Ms. McKnight's promise to forward his correspondence

15     untrue. Similarly, while Ms. Gary's failure to respond to plaintiff's phone calls may be a

16     dereliction of her duties as plaintiff's personal loan manager, such conduct cannot alone constitute

17     fraud. *See Gil*, 138 Cal. App. 4th at 1381 (dismissing fraud claims based on allegations that bank

18     manager "by virtue of his office … made implied misrepresentations that he would follow general

19     banking practice"). Finally, although plaintiff alleges that Ms. Hernandez promised to research his

20     claim and then failed to do so, he does not explain how he "actually and justifiably relied upon the

21     … misrepresentation in acting to his detriment." *Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 157

22     (Cal. Ct. App. 1996). Plaintiff's additional contention regarding Ms. Hernandez—that she falsely

23     indicated that BA would defer the foreclosure sale—was contradicted by his statement at oral

24     argument that BA has postponed the sale since November 2011. Accordingly, the court grants

25     defendants' motion to dismiss plaintiff's claims for fraud and intentional misrepresentation. To the

26     extent that such claims are based on conduct by BA and Recontrust in 2011, plaintiff may amend

27     his complaint to attempt to adequately plead the elements of misrepresentation and reliance.

28     Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE
EDM

United States District Court
For the Northern District of California

**5.     Negligence (Fifth Cause of Action)**

Defendants argue that plaintiff's claim for negligence should be dismissed because they owed no duty of care to plaintiff. "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. . . . Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Ansanelli v. JPMorgan Chase Bank, N.A.*, No. 10-03892, 2011 WL 1134451, at *8 (N.D. Cal. Mar. 28, 2011) (quoting *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991)).  In determining the existence of a duty of care, a court may consider: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* at 1098.

As in *Ansanelli*, the court finds that BA went beyond its role as a "silent" lender in its dealings with plaintiff. *Ansanelli*, 2011 WL 1134451, at *8. In that case, the court found a duty of care where the bank defendant offered the plaintiffs a trial modification plan, then reneged on a promise to modify the plaintiffs' loan and reported the loan as past due despite the fact that plaintiffs made proper payments, damaging their credit rating. *Id.* Similarly, BA is alleged to have executed and breached the modification agreement, then engaged in a series of contradictory and somewhat misleading communications with plaintiff—in person, in writing, and by phone—regarding the status of his loan. Under such circumstances, it was entirely forseeable that BA's conduct could result in damage to plaintiff's credit rating or a decrease in the value of his home. *Compare Ottolini v. Bank of America*, No. 11-0477 EMC, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19, 2011) (distinguishing *Ansanelli* where "the application for loan modification had not progressed to a concrete stage and … there is no indication of the likelihood that such an application would

11

United States District Court
For the Northern District of California

1   have been granted"). Accordingly, the court denies the motion to dismiss plaintiff's negligence

2   claim as to BA.

3   **6.   Wrongful Foreclosure Under California Civil Code Sections 2923.5 and 2924 (Sixth and Twelfth Causes of Action)**

4

5   Plaintiff's wrongful foreclosure claim is based on alleged violations of California Civil

6   Code sections 2923.5 and 2924, which impose procedural requirements on parties seeking to initiate

7   nonjudicial foreclosure proceedings. "Because nonjudicial foreclosure is a drastic sanction and a

8   draconian remedy, [t]he statutory requirements must be strictly complied with." *Anolik v. EMC*

9   *Mortgage Corp.*, 128 Cal. App. 4th 1581, 1588 (Cal. Ct. App. 2005) (internal citations and

10   quotation marks omitted). The court examines each of plaintiff's allegations in turn.

11   **A.   Section 2923.5**

12   Section 2923.5 obligates a party to contact a borrower by phone or in person at least 30

13   days before filing a notice of default in order to "explore options for the borrower to avoid

14   foreclosure." Cal. Civ. Code § 2923.5(a)(2). The statute also requires a notice of default to include

15   "a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower" or

16   "has tried with due diligence to contact the borrower as required by this section." Cal. Civ. Code §

17   2923.5(b). "The right conferred by section 2923.5 is a right to be contacted to 'assess' and 'explore'

18   alternatives to foreclosure prior to a notice of default." *Mabry*, 185 Cal. App. 4th at 225. "Any

19   'assessment' must necessarily be simple—something on the order of, 'why can't you make your

20   payments?' … Exploration must necessarily be limited to merely telling the borrower the traditional

21   ways that foreclosure can be avoided …, as distinct from requiring the lender to engage in a process

22   that would be functionally indistinguishable from taking a loan application in the first place." *Id.* at

23   232. "The *only* remedy provided [for a violation of Section 2923.5] is a postponement of the sale

24   before it happens." *Id.* at 235 (emphasis in original).[2]

---

25   [2]   Several federal courts in this circuit have rejected *Mabry*'s analysis and found that Section

26   2923.5 is preempted by the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461, *et seq. See, e.g.*, *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1033 (N.D. Cal. 2010) (citing

27   cases). However, as defendants have not raised this issue in their motion to dismiss, the court does not address it here.

28
Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE
EDM

1    Plaintiff alleges that defendants failed to "interact" with him as required by Section 2923.5

2    before filing the notice of default on August 3, 2011. Compl. ¶ 135. Defendants first argue that they

3    met the statutory requirement to "explore[] loss mitigation" because plaintiff had already been

4    granted a loan modification by the time the notice was issued. Dkt. No. 5 at 15. The court disagrees.

5    The gravamen of plaintiff's claim is that defendants filed the notice without addressing his repeated

6    complaints that BA had unilaterally and surreptitiously changed the terms of the modification

7    agreement. Under such circumstances, the fact that plaintiff's loan had been modified more than a

8    year earlier has little bearing on whether defendants were in compliance with Section 2923.5 *at the*

9    *time the notice was issued.* As the California Court of Appeal has explained, "compliance with

10   section 2923.5 is necessarily an individualized process. After all, the details of a borrower's

11   financial situation and the options open to a particular borrower to avoid foreclosure are going to

12   vary, sometimes widely, from borrower to borrower." *Id.* Given that it appears to have been clear by

13   the summer of 2011 that a determination of the parties' obligations under the modification

14   agreement was in order, Section 2923.5 put the onus on the bank to clarify the status of plaintiff's

15   loan before filing a notice of default. Instead, defendants are alleged to have admitted that they

16   unilaterally changed the terms of the loan, invited plaintiff to a meeting to discuss the issue, then

17   recorded a notice of default before the meeting occurred. Such conduct does not comply with

18   defendants' obligation to "*communicate* about a borrower's situation and the options to avoid

19   foreclosure." *Mabry*, 185 Cal. App. 4th at 224 (emphasis in original).

20   Defendants next contend that the statutory requirement is satisfied because the notice of

21   default contains a declaration stating that a BA representative "tried with due diligence to contact

22   the borrower in accordance with California Civil Code Section 2923.5." *See* Dkt. No. 6-1 (RJN) Ex.

23   C at 4. Again, defendants' argument is inapposite here, where the question is not whether

24   defendants had *any* contact with plaintiff regarding his loan, but whether they actually attempted to

25   determine if plaintiff was in default at the time the notice was issued. Further, as the declaration

26   indicates that it was executed in "Richardson, TX" while the subject property is located in

27   Freemont, CA, the court has some doubt as to the document's credibility. *See, e.g.*, *Kennedy v. Bank*

28

Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING
MOTION TO STRIKE
EDM

United States District Court
For the Northern District of California

1    *of Am. N.A.*, No. 12-952 YGR, 2012 WL 1458196, at *14-15 (N.D. Cal. Apr. 26, 2012) ("While

2    Defendants may be correct that the declaration attached to their Notice of Default here is sufficient

3    under the statute, the truthfulness of that declaration is something that cannot be established on the

4    pleadings."). Accordingly, the court denies the motion to dismiss plaintiff's claim under Cal. Civ.

5    Code § 2923.5.

6        **B.  Section 2924**

7        Cal. Civ. Code § 2924(a)(1) requires a notice of default to "set[] forth the nature of each

8    breach actually known to the beneficiary." A valid notice of default "must contain at least one

9    correct statement of a breach of an obligation the deed of trust secures. Moreover, the breach

10   described in the notice of default must be substantial enough to authorize use of the drastic remedy

11   of nonjudicial foreclosure. If a notice of default does not satisfy these requirements, then the notice

12   is invalid and the lender cannot exercise the power of sale based on that notice." *Anolik*, 128 Cal.

13   App. 4th at 1589. A notice of default is not void under Section 2924 where it contains only "slight

14   procedural irregularit[ies]" which result in no prejudice to the plaintiff. *Knapp v. Doherty*, 123 Cal.

15   App. 4th 76, 94 (Cal. Ct. App. 2004) (premature mailing of sale notice did not justify setting aside

16   sale where borrowers had adequate notice of sale date); *Pantoja v. Countrywide Home Loans, Inc.*,

17   640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009) (rejecting request to invalidate sale based on

18   allegation that notice of default failed to name the proper beneficiary).

19       Here, plaintiff alleges that the notice of default is invalid because it misstated the amount

20   owed under the deed of trust and was "disputed in a timely manner." Compl. ¶ 185. Defendants do

21   not dispute that the notice was deficient, but argue that because a foreclosure sale has not taken

22   place, plaintiff has suffered no prejudice.

23       The court finds defendants' argument unpersuasive. The California Court of Appeal has

24   held that a trial court may enjoin a *pending* foreclosure sale where the notice of default upon which

25   the sale is predicated is defective. *See Miller v. Cote*, 127 Cal. App. 3d 888, 894 (Cal. Ct. App.

26   1982); *Anolik*, 128 Cal. App. 4th at 1601. Under defendants' logic, even if a notice of default were

27   plainly invalid, a borrower would have to wait until the subject property was sold in order to sue.

28

**United States District Court**
For the Northern District of California

14

Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING
MOTION TO STRIKE
EDM

1  Such a requirement would be both extremely inefficient and an unnecessary drain on the parties'

2  resources. In addition, the complaint contains allegations of prejudice resulting from the recording

3  of the notice, including impairment of plaintiff's credit rating and a subsequent increase in his

4  borrowing costs. Compl. ¶¶ 157; 185. Accordingly, the court denies the motion to dismiss

5  plaintiff's claim under Section 2924.

### 7.   Unfair Competition (Seventh Cause of Action)

7  Plaintiff's seventh cause of action is brought under California's Unfair Competition Law

8  ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. The UCL establishes three forms of unfair

9  competition: (1) unlawful conduct, (2) unfair conduct, or (3) deceptive or fraudulent conduct. *Cel-*

10  *Tech Comm v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Facts supporting a § 17200 claim

11  must be pled with reasonable particularlity. *Khoury v. Maly's of Cal.*, 14 Cal. App. 4th 612, 619

12  (1993).

13  For the most part, plaintiff does not state with sufficient particularity the business practices

14  through which defendants are alleged to have violated § 17200. Instead, his allegations take aim

15  generally at investment schemes, foreclosures, and the mortgage industry, none of which is enough

16  to sustain a claim under the UCL. However, plaintiff also asserts that defendants are liable under the

17  statute's "unlawful" prong for violating Cal. Civ. Code §§ 2923.5 and 2924. Compl. ¶¶ 155-157. As

18  discussed above, the court finds that plaintiff has stated a claim under both provisions. The court

19  therefore denies the motion to dismiss the UCL claim insofar as it seeks injunctive relief. However,

20  because the only remedy available under Sections 2923.5 and 2924 is the postponement of the

21  foreclosure sale, plaintiff's prayer for restitution under the UCL is dismissed.

### 8.   RFDCPA (Eighth Cause of Action)

23  The RFDCPA prohibits debt collectors from engaging in abusive, deceptive and unfair

24  practices in the collection of consumer debts. *See* Cal. Civ. Code § 1788, *et. seq.* However,

25  California courts have routinely held that foreclosure under a deed of trust is not the "collection of

26  a debt" under the RFDCPA. *See, e.g.*, *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1199

27  (C.D. Cal. 2008); *Ines v. Countrywide Home Loans, Inc.*, No. 08-1267, 2008 WL 4791863, at *2

28

15

Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING
MOTION TO STRIKE
EDM

*United States District Court*
For the Northern District of California

(S.D. Cal. Nov. 3, 2008). As it is clear that plaintiff's RFDCPA claim is premised solely on defendants' initiation of foreclosure proceedings, his eighth cause of action is dismissed with prejudice.

**9.      Accounting (Ninth Cause of Action)**

Plaintiff's accounting claim asserts that BA is holding $3,900 in payments "which it has never applied to plaintiff's account or returned." Compl. ¶ 59. To state a claim for an accounting, plaintiff must state facts showing circumstances that require an accounting in equity and that "some balance is due the plaintiff." *Thanh Tran v. Bank of Am. Corp.*, 11-02784, 2012 WL 837198 (S.D. Cal. Mar. 12, 2012) (quoting *Kritzer v. Lancaster,* 96 Cal. App. 2d 1, 7 (Cal. Ct. App. 1950)). An accounting frequently "presents a fiduciary relation between the parties in the nature of a trust which brings it especially within equitable remedies." *Id.*

The complaint does not show the existence of a fiduciary relationship between the parties or "the possession by … defendant[s] of money or property which, because of [their] relationship with … plaintiff, [they are] obliged to surrender." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179-80 (Cal. Ct. App. 2009) (in the absence of a fiduciary relationship, an accounting may be warranted only under special circumstances). Moreover, an action for accounting is not available where the plaintiff alleges the right to recover a specific sum. *See id.* The reason is that an accounting generally serves as a discovery device to ascertain "what, if any, sums are owed to the plaintiff." *Id.* Here, plaintiff has clearly identified the specific amount he believes he is owed by defendants. The court therefore finds that plaintiff has failed to show that an accounting is warranted, and grants the motion to dismiss the ninth cause of action without prejudice.

**10.      TILA Claim (Tenth Cause of Action)**

Plaintiff's TILA claim alleges that defendants failed to provide a "Truth in Lending" statement or disclose certain terms of the modification agreement when it was executed in 2010. *See* Compl. ¶ 174. The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair

16

Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE
EDM

United States District Court
For the Northern District of California

credit billing and credit card practices." 15 U.S.C. § 1601(a). The statute requires, among other things, disclosure of finance charges, the "cost of credit as a yearly rate," and information about adjustable interest rates. *See* 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18(e) ("Regulation Z"). "An adjustment to the interest rate with or without a corresponding adjustment to the payment in a variable-rate transaction … is an event requiring new disclosures to the consumer." 12 C.F.R. 226.20.

Defendants argue that plaintiff's TILA claim must be dismissed because they are the servicers, not the creditors, of plaintiff's loans. A loan servicer may not be held liable under TILA "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1); *see also Kesten v. Ocwen Loan Serv., LLC*, No. 11-6981, 2012 U.S. Dist. LEXIS 16917, at *8 (N.D. Cal. Feb. 9, 2012) (the obligation to provide notice under § 226.20(c) belongs to the "owner" of the loan). According to defendants, because neither BA nor Recontrust acquired "legal title" to plaintiff's mortgage, they were not obligated to provide TILA disclosures along with the modification agreement.

While the nature of BA's relationship to the subject loan is not entirely clear, the complaint sufficiently establishes that the bank "owned" plaintiff's mortgage within the meaning of TILA. Plaintiff alleges that BA "took over" Countrywide's Home Loan portfolio between June 2009 and June 2010, that all of Countrywide's assets and liabilities were "transferred" to BA, and that Countrywide subsequently "ceased to exist." Compl. ¶ 33-37. As there is no question that Countrywide was the original owner of plaintiff's loan, these assertions strongly suggest that BA "acquir[ed] legal title to [plaintiff's] debt obligation." 12 C.F.R. 226.39(a)(1). Furthermore, it is undisputed that in April 2010, BA and plaintiff executed a contract that substantially modified the terms of the underlying loan, including an adjustment to plaintiff's monthly payments and interest rate. Defendants cite no authority holding that a bank with sufficient authority to enter into such an agreement does not "own" the underlying loan for the purposes of TILA. Nor has BA produced any evidence of its status as a mere "servicer" of the loan, such as a copy of its servicing agreement with the loan's purported owner. As TILA is clearly intended to require disclosure of the kind of

17

information BA allegedly failed to provide, if the bank could avoid liability merely by *characterizing* itself in a motion to dismiss as a "servicer" rather than a "creditor," the purpose of the statute would be severely undermined. Accordingly, the court denies the motion to dismiss plaintiff's TILA claim.

**11.      Declaratory Relief (Eleventh Cause of Action)**

In his eleventh cause of action, plaintiff seeks a judicial determination of the parties' obligations under the modification agreement, and a declaration of "who owns [the] subject property." Compl. ¶ 183. When a party seeks a declaratory judgment, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Defendants argue that no actual controversy exists because "plaintiff still holds title to his property." Dkt. No. 5. The court disagrees. As discussed throughout this order, plaintiff's allegations have raised substantial questions as to the status of plaintiff's loan, and consequently, whether defendants have a right to foreclose on the subject property. Accordingly, the court exercises its "unique and substantial discretion in deciding whether to declare the rights of litigants" and denies the motion to dismiss plaintiff's claim for declaratory relief. *MedImmune*, 549 U.S. at 136 (internal citations omitted).

**12.      Void or Cancel Assignment of Deed of Trust (Thirteenth Cause of Action)**

Plaintiff alleges that MERS did not have legal authority to assign the Deed of Trust, and that the assignment was thus invalid. The Deed of Trust states: "MERS is acting solely as a nominee for Lender and Lender's successors and assigns." Dkt. No. 6 (RJN) Ex. A. A "nominee" is a person or entity designated to act for another in a limited role—in effect, an agent. *Born v. Koop*, 200 Cal. App. 2d 519, 528 (Cal. Ct. App. 1962); *see also Cisco v. Van Lew*, 60 Cal. App. 2d 575, 583–84, (Cal. Ct. App. 1943). The extent of MERS' authority as a nominee is defined by its agency agreement with the lender; consequently, whether MERS could assign the lender's interest

18

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   in the note must be determined by reference to that agreement. *See, e.g.*, *Van't Rood v. County of*

2   *Santa Clara*, 113 Cal. App. 4th 549, 571 (Cal. Ct. App. 2003) (agency typically arises by express

3   agreement); Cal. Civ. Code § 2315 (agent has such authority as principal confers upon agent).

4          Here, plaintiff's conclusory statement that MERS did not have authority to assign the Deed

5   of Trust is unsupported by any reference to MERS' agreement with the lender or its putative

6   assignees. Compl. ¶¶ 187, 191. Such allegations are insufficient to justify invalidating the

7   assignment. *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 272, (Cal. Ct. App.

8   2011) ("To state a claim, plaintiff was required to allege not only that the purported MERS

9   assignment was invalid, but also that HSBC did not receive an assignment of the debt in any other

10  manner. There is no such allegation."). Furthermore, as many courts in this circuit have noted,

11  MERS has standing as nominee for the lender and beneficiary under a Deed of Trust to assign its

12  beneficial interest to another party. *See, e.g.*, *Lane v. Vitek Real Estate Industries Group*, 713 F.

13  Supp. 2d 1092, 1099 (E.D. Cal. 2010); *Benham v. Aurora Loan Services*, No. 09-2059, 2009 WL

14  2880232, at *3 (N.D. Cal. Sept. 21, 2009) ("As the beneficiary under the Deed of Trust, it is clear

15  that MERS had the authority to substitute Weiss as the trustee."). The court therefore grants

16  defendants' motion to dismiss plaintiff's thirteenth cause of action with leave to amend.

17  **13.     Promissory Estoppel (Fourteenth Cause of Action)**

18         Plaintiff last invokes the doctrine of promissory estoppel, asserting that he relied to his

19  detriment on defendants' promise that his mortgage would be modified as stated in the modification

20  agreement. "Promissory estoppel is a legal fiction designed to substitute for contractual

21  consideration where one party relied on another's promise without having entered into an

22  enforceable contract." *Philips Med. Capital, LLC v. Med. Insights Diagnostics Ctr, Inc.*, 471 F.

23  Supp. 2d 1035, 1043 (N.D. Cal. 2007) (quoting *Hartford Fire Ins. Co. v. Federated Dep't Stores,*

24  *Inc.,* 723 F. Supp. 976, 993 (S.D.N.Y. 1989). "[P]romissory estoppel has no application when

25  parties have entered into an enforceable agreement." *Philips*, 471 F. Supp. 2d 1043 (quoting

26  *Synesiou v. Designtomarket, Inc.*, No. 01-5358, 2002 WL 501494, at *4 (E.D. Pa. Apr. 3, 2002).

27  The Deed of Trust and modification agreement at issue here are both enforceable contracts. As such,

28

19

1    the doctrine of promissory estoppel simply does not apply to this case. For this reason the court

2    grants defendants' motion to dismiss this claim with prejudice.

3    **14.    Motion to Strike Prayer for Punitive Damages**

4           Under Fed. R. Civ. P. 12(f), a court "may strike from a pleading an insufficient defense or

5    any redundant, immaterial, impertinent, or scandalous matter." Motions to strike should generally be

6    granted "only when necessary to discourage parties from raising allegations that are completely

7    unrelated to the relevant claims and when the interests of justice so require." *Serpa v. SBC

8    Telecomms., Inc.*, No. C 03-4223 MHP, 2004 WL 2002444, at *3 (N.D. Cal. Sept. 7, 2004) (citing

9    *Augustus v. Board of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962)).

10          Defendants move to strike plaintiff's request for punitive damages. They note that such an

11   award requires proof of "oppression, fraud or malice," Cal. Civ.Code § 3294, and argue that

12   plaintiff's allegations regarding such elements are "conclusory" and "unsupported." Dkt. No. 23.

13          The Ninth Circuit has recently held that Rule 12(f) does not authorize a district court to

14   strike a claim for damages on the ground that such damages are precluded as a matter of law. *See

15   Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010). The court cautioned that in

16   order to avoid creating inconsistencies with Rule 12(b)(6), which is subject to a different standard of

17   review that Rule 12(f), motions to strike should not be used "as a means to dismiss some or all of a

18   pleading." *Id.* at 974.

19          In this case, while the court is skeptical that plaintiff will ultimately prevail in his claim for

20   punitive damages, it is clear that defendants' motion is "really an attempt to have certain portions of

21   [plaintiff's] complaint dismissed or to obtain summary judgment against [him] as to those portions

22   of the suit." *Id.* Indeed, defendants do not contend plaintiff's allegations are redundant, immaterial,

23   impertinent, or scandalous, but rather that they are "conclusory," expressly referencing the standard

24   for dismissal. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint

25   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

26   obligation to provide the grounds of his entitle[ment] to relief requires more than labels and

27

28

Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING
MOTION TO STRIKE
EDM

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal

2   citations and quotation marks omitted). Accordingly, the court denies the motion to strike.

3   ### III.   ORDER

4          For the foregoing reasons, the court grants in part and denies in part plaintiff's motion to

5   dismiss as follows: Plaintiff's claims under the RFDCPA (Eighth Cause of Action) and for

6   Promissory Estoppel (Fourteenth Cause of Action) are dismissed with prejudice. Plaintiff's claims

7   for Breach of the Implied Covenant of Good Faith and Fair Dealing (Second Cause of Action),

8   Fraud & Intentional Misrepresentation (Third and Fourth Causes of Action), Accounting (Ninth

9   Cause of Action) and To Void or Cancel Assignment of Deed of Trust (Thirteenth Cause of Action)

10  are dismissed with leave to amend. The court denies the motion to dismiss as to all other claims.

11  Any amended complaint must be filed within thirty days of the date of this order.

12

13  DATED:      May 29, 2012            _____

14                                      RONALD M. WHYTE
                                        United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

Case No.: 12-CV-00494-RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING
MOTION TO STRIKE
EDM