KURT K. ROBINSON
4681 Deadwood Drive
Fremont, California  94536-6614
Telephone: (510) 825-4453

Plaintiff
In Pro Per

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Kurt K. Robinson,<br><br>        Plaintiff,<br>  vs.<br><br>BANK OF AMERICA, individually and doing business as BANK OF AMERICA HOME LOAN SERVICING;RECON TRUST,COUNTRY WIDE BANK;DOES 1 through 1000, inclusive,<br><br>        Defendants. | Case No. CV 12-00494 JST<br>Hon. John S. Tigar<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><u>Hearing Date:</u><br>Date:    December 19, 2013<br>Time:    2:00 p.m.<br>Ctrm:   9-19th Floor<br><br><br>Complaint Filed:  November 29, 2011<br>Trial:           February 3, 2014 |

## <u>TABLE OF CONTENTS</u>

Page

I.     INTRODUCTION……………………………….……………………   5

II.    FACTUAL BACKGROUND………………………………………..   6

III.   FACTUAL ISSUES……………………………………………   10

IV.   LEGAL STANDARD………………………………………………   13

     A.    Summary Judgment Standard…………………………. ….   13

V.    BREACH OF CONTRACT………………………………………   14

     A.    Applicable Rules of Contract Interpretation under California Law………………………………………………….   14

     B.    Breach of the Modification Agreement………………………   14

     C.    Intention of the parties as it existed at the time of contracting shows the Agreements were ambiguous (applying Cal. Civ. Code §1636)………………………………………………   16

VI.   NEGLIGENCE……………………………………………………   17

     A.    Defendants Owe a Duty to Plaintiff…………………………   17

     B.    Wrongful Foreclosure under California Civil Code Sections 2923.5 and 2924 (Sixth and Twelfth Causes of Action)…….   18

          1.    Section 2923.5………………………………………   19

          2.    Section 2924………………………………………   21

     C.    TILA Claim (Tenth Cause of Action)………………………   22

     D.    Declaratory Relief (Eleventh Cause of Action)………………   23

     E.    Cases Finding that Evidence Within Affidavits Must Be Admissible to Be Considered on Summary Judgment……….   23

     F.    Punitive Damages…………………………………………   25

VII.  CONCLUSION…………………………………………………   25

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

1

**<u>TABLE OF AUTHORITIES</u>**

2

<u>Cases</u>                                                                                                                         <u>Page</u>

3

*Anderson v. Liberty Lobby, Inc.,*
4   477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)…………………… 1.12

5   *Anolik v. EMC Mortgage Corp.,*
128 Cal. App. 4th 1581, 1588 (Cal. Ct. App. 2005………………………………..  19
6

*Ansanelli v. JPMorgan Chase Bank, N.A.,*
7   (N.D. Cal. Mar. 28, 2011)……………………………………………………………  16

8   *Beyah v. Coughlin,*
789 F.2d 986, 989 (2d Cir. 1986)……………………………………………………  24
9

*Bias v. Moynihan,*
10   508 F.3d 1212, 1224 (9th Cir. 2007)……………………………………………  25

11   *Celotex Corp. v. Catrett,*
12   477 U.S. 317, 324 (1986)……………………………………………………………  12

13   *Cleary v. News Corp.,*
30 F.3d 1255, 1259 (9th Cir. 1994)……………………………………………  12
14

*Consul Ltd. v. Solide Enterprises, Inc.,*
15    802 F.2d 1143, 1149 (9th Cir. 1986)……………………………………………..  14

16   *First Nat'l Bank v. Cities Serv. Co.,*
17   391 U.S. 253, 289……………………………………………………………………  12

18   *Fong v. American Airlines, Inc.,*
626 F.2d 759, 762-63 (9th Cir.)  980……………………………………………  24
19

*Gleklen v. Democratic Cong. Campaign Comm., Inc.,*
20    199 F.3d 1365, 1369 (D.C. Cir. 2000)……………………………………………  12

21   *Jenkins v. Winter,*
22   540 F.3d 742, 748 (8th Cir. 2008)……………………………………………………  24

23   *Knapp v. Doherty,*
123 Cal. App. 4th 76, 94 (Cal. Ct. App. 2004)……………………………………  21
24

*Mabry,*
25   185 Cal. App. 4th at 225……………………………………………………………..  19

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

Cases                                                                                                          Page

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S.574, 106 S.Ct. 1348 (1986)……………………………………….. 12

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
312 U.S. 270, 273 (1941)……………………………………………… 23

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118, 127 (2007)……………………………………………….. 23

*Miller v. Cote*,
127 Cal. App. 3d 888, 894 (Cal. Ct. App. 1982)……………………………… 22

*Nymark v. Heart Fed. Savings & Loan Assn.*,
231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991)………………………… 17

*Pantoja v. Countrywide Home Loans, Inc.*,
640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009)…………………………….. 21

*Sipe v. Countrywide Bank*,
690 F. Supp. 2d 1141, 1153 (E.D.Cal. 2010)…………………………….. 16

*T.W. Electrical Service Inc. v. Pacific Electrical Contractors Association*,
809 F.2d 626, 630-31(9th Cir. 02/05/1987)……………………………… 12

*Ting v. United States*,
927 F.2d 1504, 1509 (9th Cir. 1991)…………………………………….. 12

*Sanguinetti v. CitiMortgage, Inc. et al*……………………………………...17

*United Ass'n Local 38 Pension Trust Fund v. Aetna Casualty & Sur. Co.*,
 790 F.2d 1428 (9th Cir. 1986)…………………………………………….. 15

*Velazquez v. GMAC Mortg. Corp.*,
 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008)…………………………….. 14

*Wall Street Network, Ltd. v. New York Times Co.*,
164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2009)…………………………….. 14

*Wagner v.Benson*,
101 Cal. App. 3d 27, 35 (1980)…………………………………………… 16

*Whittlestone,  Inc. v. Handi-Craft Co.*,
618 F.3d 970, 971 (9th Cir. 2010)……………………………………… 25

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

**California Civil Code Sections:**                                                 **Page**

   §1636 …………………………………………………………….. 15
   §1641 …………………………………………………………….. 15
   §1647……………………………………………………………... 15
   §1648……………………………………………………………. 15
   §1649 …………………………………………………………….. 15
   §1654………………………………………………………………. .15
   §2923.5 ……………………………………………………………15
   §2924…………………………………………………………….. 15


**Federal Statues**

Rule 56(d) of the Federal Rules of Civil Procedure.

……………………………………………………………………………1,4,7.

15 U.S.C. § 1601(a) …………………………………………………..22

15 U.S.C. § 1638(a) …………………………………………………..22

12 C.F.R. § …………………………………………………………

226.18(e) ("Regulation Z"). …………………………………………

12 C.F.R. 226.20……………………………………………………….

12 C.F.R. 226.39(a) (1). ………………………………………………..

iv.

# I.  INTRODUCTION

Plaintiff respectfully submits the following memorandum in opposition to Defendant BA's motion for summary judgment and, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.   Plaintiffs respectfully request that the Court deny Defendants' motion for summary judgment and instruct Defendants not to file duplicative motions that merely distract Plaintiffs from the preparation of their case for trial. Many of the issues raised in this motion are identical to issues raised by their Motion to Dismiss that was previously denied May 29, 2012. Defendants' motion for summary judgment is duplicative and merely restates and attempts to relitigate their motion to dismiss.

The loan modification agreement at issue in this case was silent on the issue of property taxes and escrow payments.   One of the key disputes at issue in this case is if the modification agreement was ambiguous as it related to payments for property taxes and escrow, and if that ambiguity be construed against the drafter of the agreement, BA.  Rather than acknowledging one of the key issues at the heart of this case, the first line of the defendants' Memorandum of Points and Authorities, starts "plaintiff failed to pay his property taxes."   Defendants' motion for summary judgment appears to be a failed attempt to deny liability for a loan modification

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

agreement based primarily on the non-payment of property taxes.   Plaintiff had no obligation under the loan modification agreement that made him responsible for the payment of the full amount of taxes and escrow. ( See Exhibit A. Loan Modification Document )

   *The defendants misstated or ignored facts.* The court will note the significant difference in the unsupported facts advanced by Defendants in their Motion for Summary and the Factual Background submitted by the Plaintiff, which is supported by the record.  The facts stated by Defendants are inaccurate.  Defendants have attempted to skew the facts in a direction that places them in the most positive light instead of reciting facts based on the record. The factual allegations in their motion need to be factually correct in order for this court to accurately rule on summary judgment.  Defendants "cherry picked" Plaintiff's testimony and left out several key points.

   Summary Judgment cannot be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, conclusively show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

## II. FACTUAL BACKGROUND

   On January 22, 1988, plaintiff purchased residential property located at 4681 Deadwood Drive in Fremont, California (the "subject property"). *See* Compl. ¶ 51. On January 6, 2005, plaintiff refinanced the loan on the subject property through Countrywide, executing a Deed of Trust that named "America's Wholesale Lender" as lender, "CTC Real Estate Services" as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary. *See id.;* Compl. Ex. A. The Deed of Trust obligated plaintiff to make periodic and gradually escalating

7

mortgage payments to the lender, including principal, interest and certain "Escrow Items" such as taxes and insurance premiums. *See id.*

Plaintiff's mortgage eventually changed hands. At some point between June 3, 2009 and June 3, 2010, BA allegedly "took over" Countrywide's Home Loan portfolio. Compl. ¶ 33. Countrywide customers, including plaintiff, began to "use [BA] customer service resources … receive mortgage statements from [BA], make their mortgage payments to [BA], and apply to [BA] if they wish[ed] to modify their mortgages." *Id.* In addition, on April 1, 2010, MERS executed an assignment of plaintiff's Deed of Trust naming Recontrust as trustee and "The Bank of New York Mellon FKA the Bank of New York as Trustee for the Benefit of the Certificate holders of CWABS 2005-01, Inc." as beneficiary. Dkt. No. 6-1 (RJN) Ex. B.

By the spring of 2010, plaintiff's monthly mortgage payment was $2,531. *Id.* ¶ 52. He requested a loan modification, and received a response from BA asking for certain financial documentation. *Id.* On April 2, 2010, plaintiff and BA entered into a loan modification agreement (the "modification agreement"). *See* Compl. Ex. B. The modification agreement indicated that it "amend[ed] and supplement[ed]" the original Deed of Trust. *Id.* Under a subheading titled "Amount of Borrower's Initial Scheduled Monthly Payments," the agreement provided that "as of May 1, 2010, the scheduled monthly payment will be in the amount of U.S. $1,906.09. The scheduled monthly payment may change on that day of every twelfth month thereafter …" (the "modified monthly payment") *Id.* The agreement further noted that plaintiff's interest rate would escalate from 5.25% in 2011 to 6.125% in May 5, 2010.  Plaintiff had not received a signed copy of the contract or any Truth in Lending notices despite repeated requests to BA for such materials. Compl. ¶ 54.  On August 1, 2010, plaintiff attempted to make his modified monthly payment, but BA refused to accept it, and indicated there was no record of a

loan modification on file. *Id.* ¶ 57. BA then sent plaintiff an invoice demanding monthly

payments ranging from $3,748.39 to $6,766.84. *Id.* Plaintiff attempted to contact BA by phone

but received no response. *Id.* For the next several months, plaintiff tried in vain to make

payments of approximately $1,900. *Id.* ¶ 58. In December 2010, BA finally accepted a payment,

and informed plaintiff by phone that the "modification was showing and that there had been a

mistake." *Id.* However, from January 15, 2011 through May 15, 2011, every time plaintiff

attempted to make a payment he was told that the BA system had a "problem" that prevented BA

from accepting any payment under the amount of $3,748.39. *Id.* ¶ 59.

      In May 2011, BA returned plaintiff's December 2010 payment without explanation. *Id.*

Later that month, plaintiff had a phone conversation with a BA representative during which the

bank conceded that it had "unilaterally changed the terms of the modification agreement"

without informing plaintiff and suggested that it could approve a "new modification amount at

$2,500." Compl. Ex. E. On May 19, 2011, plaintiff sent a letter to BA's loan modification denial

department chronicling this conversation, and in late July, BA invited plaintiff to attend a loan

assistance event on August 18, 2011 in San Francisco. *See id;* Compl. Ex. H.   On August 3,

2011, more than two weeks before the plaintiff's scheduled meeting with BA, Recontrust

recorded a Notice of Default indicating that plaintiff had not made a loan payment since July

2010 and was $48,776.45 in arrears. *See* Dkt. No. 6 (RJN) Ex. B. The notice which was executed

in Texas was accompanied by a declaration from a BA Mortgage Servicing Specialist stating that

BA had "tried with due diligence to contact the borrower in accordance with California Civil

Code Section 2923.5." *Id.*   On August 18, 2011, plaintiff attended BA's loan assistance event.

After waiting for seven hours, he was told by a BA representative that the bank would "research"

issues related to its refusal to accept his modified monthly payments. *Id.* ¶ 60.   On August 30,

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

2011, plaintiff sent Recontrust a letter indicating that he "intended to dispute the debt" allegedly owed under the Deed of Trust. Compl. Ex. J. On September 19, 2011, Recontrust representative Wendy McKnight replied, noting that plaintiff's correspondence had been forwarded to BA for "review and response." Compl. Ex. K. Recontrust subsequently "put the debt on [plaintiff's] credit report without … obtaining verification [from BA]." Compl. ¶ 62.  At some point during the fall of 2011, Recontrust issued a Notice of Trustee's sale indicating that a foreclosure sale of the subject property would take place on December 2, 2011. Compl. Ex. I. On October 4, 2011, BA Litigation Coordinator Nina Hernandez notified plaintiff by letter that "the concerns addressed in your correspondence require further detailed analysis. We will respond to your request after we have completed our investigation." Compl. ¶ 63. On November 20, 2011, plaintiff spoke to Ms. Hernandez by phone and was informed that "no research had been done" and that "only Recontrust could stop the sale or accept a full tender." Compl. ¶ 63. The same day, plaintiff spoke to Recontrust and was told to contact BA concerning the foreclosure. Compl. ¶ 64. Between November 22 and 29, 2011, plaintiff attempted four times to contact Cindy Gary, his personal loan manager at BA, but received no response. *Id.* Thereafter, he again spoke to Ms. Hernandez, who indicated that she would attempt to postpone the sale. *Id.* Plaintiff alleges that Ms. Hernandez made "no effort" to delay foreclosure.  BA has postponed the sale of the subject property on a month-to-month basis since November 2011 and that he is still living in his home. Plaintiff filed the instant action on November 29, 2011 in Alameda County Superior Court. *See* Dkt. No. 1. Defendants removed the matter to this court on February 1, 2012. *See* Dkt. No. 1. Plaintiff alleged that, beginning in 2009 and continuing to this date, Bank of America also violated the California Laws by engaging in a similar pattern and practice of misrepresentations in their loan modification and foreclosure programs. Including but not limited to; failing to

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

provide Plaintiff with a signed copies of the loan modification agreement after several requests

on two separate loan modifications;

- failing to notify Plaintiff of unilateral decision to alter the terms of the loan modification agreement;

- falsely notifying Plaintiff or credit reporting agencies that Plaintiff was in default when they were not; and

- misleading Plaintiff into believing that they are researching issues to help them avoid foreclosure on the one hand and yet at the same time continuing their efforts to complete the foreclosure on the other

## **III. FACTUAL ISSUES**
### **THERE ARE NUMEROUS GENUINE ISSUES OF MATERIAL FACT THAT DISENTITLE DEFENDANTS TO JUDGMENT AS A MATTER OF LAW.**

This case is replete with genuine issues of material fact that preclude the entry of

summary judgment. Under Federal Rule of Civil Procedure 56(c), a moving party may prevail on

a motion for summary judgment only if it "show[s] that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." A fact is

"material" if it "might affect the outcome" of a case. *Anderson v. Liberty Lobby*, 477 U.S. 242,

248 (1986). A dispute about that fact is "genuine," and summary judgment "will not lie," where

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

A.     In the instant case major issues remain as to whether the notice of default is

invalid because it misstated the amount owed under the deed of trust and was disputed in a

timely manner.  Section 2923.5 obligates a party to contact a borrower by phone or in person at

least 30 days before filing a notice of default in order to "explore options for the borrower to

avoid foreclosure." Cal. Civ. Code § 2923.5(a) (2). The statute also requires a notice of default to

include "a declaration that the mortgagee, beneficiary, or authorized agent has contacted the

borrower" or "has tried with due diligence to contact the borrower as required by this section." Cal. Civ. Code § 2923.5(b).  An open question remains regarding whether defendants had *any* contact with plaintiff regarding his loan prior to entering their request for default and whether they actually attempted to determine if plaintiff was in default at the time the notice of default was issued.

B.     The Defendants cite a declaration that was executed in "Richardson, TX" as indicating their attempt to comply with statutory provisions of diligence. The subject property is located in Fremont, CA.    In the Court's ruling of May 29, 2012, on the Motion to Dismiss, the court expressed "some *doubt as to the document's credibility. See* ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE[Re Docket No. 5]  *("While Defendants may be correct that the declaration attached to their Notice of Default here is sufficient under the statute, the truthfulness of that declaration is something that cannot be established on the pleadings. ")* (emphasis added).  There is a fact issue in whether the letter was sent by Defendant, or whether Defendant ultimately ever made any attempt to contact Plaintiff but instead simply made a false statement.  (See Affidavit of Kurt K. Robinson in Support of Motion for Summary Judgment).

C.     There is also a fact issue on the amounts calculated as due and owing in the Notice of Default. The affidavits supplied by Defendants are deficient, because the affiant never states that such amounts were calculated by them, personally known by them or personally used by them to guarantee the accuracy of the amounts calculated as due and owing for default. Therefore, triable issues remain on the Notice of Default as to whether the amounts calculated as due and owing were accurate.  The notice of default is invalid because it misstated the amount

owed under the deed of trust and was "disputed in a timely manner." Compl. ¶ 185. This issue

remains a question of fact.  See also, Declaration of Kurt Robinson.

D.     It is undisputed that in April 2010, BA and plaintiff executed a contract that

substantially modified the terms of the underlying loan, including an adjustment to plaintiff's

monthly payments and interest rate. BA did not have sufficient authority to enter into such an

agreement when it did not "own" the underlying loan for the purposes of TILA.  Was BA a mere

"servicer" of the loan, such as it was required to provide a copy of its servicing agreement with

the loan's purported owner?  TILA is clearly intended to require disclosure of the kind of

information BA failed to provide. Clearly, questions of fact remain as to whether TILA was

violated and what the amount of damages is.

E.     In the instant case, it is clear that damages could result from damage to plaintiff's

credit rating and/ or a decrease in the value of his home. Defendant executed and breached the

modification agreement, then engaged in a series of contradictory and misleading

communications with plaintiff—in person, in writing, and by phone— regarding the status of his

loan.  BA's conduct could resulted in damage to plaintiff's credit rating or a decrease in the value

of his home.  Plaintiff suffered damages based on Defendants falsely notifying credit reporting

agencies that Plaintiff was in default when he was not.

F.     Several factual issues remain regarding statements made by Wendy McKnight of

Recontrust indicating that plaintiff's correspondence would be forwarded to BA for "review and

response."  Issues remain regarding the statement by Nina Hernandez of BA indicating that she

would research issues regarding the modification agreement and attempt to postpone the

initiation of foreclosure proceedings and whether she actually did that; questions remain about

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

Cindy Gary's failure to respond to plaintiff's phone calls. None of these issues are addressed in the declarations and they are clearly issues of fact that remain.

## IV.  LEGAL STANDARD

### A.      Summary Judgment Standard

Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the nonmoving party, the movant is clearly entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994).  In judging evidence at the summary judgment stage, the judge does not weigh conflicting evidence with respect to a disputed material fact…Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions…These determinations are within the province of the fact finder at trial. Therefore, ***at summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party***: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, ***the judge must assume the truth of the evidence set forth by the non- moving party with respect to that fact***.  *T.W. Electrical Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630-31(9th Cir. 02/05/1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.574, 106 S.Ct. 1348 (1986); *First Nat'l Bank v. Cities Serv. Co.*,391 U.S. 253, 289 & n.19, 20 L.Ed. 2d 569, 88 S. Ct. 1575 (1968); *Anderson v. Liberty Lobby, Inc.*,477 U.S. 242, 106 S. Ct. 2505,2510, 91 L. Ed. 2d 202 (1986) ) (internal citations omitted, emphasis added). *See also*, *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). See also  Fed.R.Civ.P. 56(e); *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)    For the nonmoving party, the evidence standard is lower. "We do not mean that the non-moving party

14

must produce evidence in a form that would be admissible at trial in order to avoid summary

judgment. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material in a form not

admissible in evidence may be used to avoid, but not to obtain summary judgment . . . ."*Tetra

Techs. Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993). The Ninth Circuit has held that

"***to survive summary judgment***, a party does ***not*** necessarily have to produce evidence in a form

that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules

of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (citing *Block

v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001)) (emphasis added).

## V.  BREACH OF CONTRACT

### A.    Applicable Rules of Contract Interpretation under California Law

The agreement is governed by the laws of California the following sections of the

California Civil Code applies.

§ 1636.  A contract must be so interpreted as to give effect to the mutual intention of the
parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.

§1641. The whole of a contract is to be taken together, so as to give effect to every part, if
reasonably practicable, each clause helping to interpret the other.

§1647. A contract may be explained by reference to the circumstances under which it was
made, and the matter to which it relates.

§1648. However broad may be the terms of a contract, it extends only to those things
concerning which it appears that the parties intended to contract.

§1649. If the terms of a promise are in any respect ambiguous or uncertain, it must be
interpreted in the sense, in which the promisor believed, at the time of making it, that the promise
understood it.

§1654. In cases of uncertainty not removed by the preceding rules, the language of a
contract should be interpreted most strongly against the party who caused the uncertainty to
exist.

### B.    Breach of the Modification Agreement

BA breached the modification agreement by refusing to accept monthly payments of

$1,906.09. In California, a claim for breach of contract requires a plaintiff to establish: (1) a

contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

(4) damage to plaintiffs. *See Wall Street Network, Ltd. v. New York Times Co.,* 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2009). Defendants do not dispute the validity of the modification agreement, but instead argue that plaintiff has failed to perform under the contract. Under California law, a contract must be interpreted in a manner that gives effect to the mutual intent of the parties if that intent can be ascertained. Cal. Civ.Code § 1636. Here, defendants' motion for summary judgment on the claim for breach of contract should not be granted as there is genuine factual dispute regarding the parties' intent.  Moreover, any ambiguity in the contract must be construed against the drafter, BA. "Ambiguities in contractual language are construed against the drafter." *Consul Ltd. v. Solide Enterprises, Inc.,* 802 F.2d 1143, 1149 (9th Cir. 1986).  As such, defendants' motion for summary judgment with respect to the breach of contract claim should not be granted.

## C.   Intention of the parties as it existed at the time of contracting shows the Agreements were ambiguous (applying Cal. Civ. Code §1636)

The modification agreement is ambiguous as to the amount of plaintiff's mortgage payments. Under a subsection titled "Amount of Borrower's Initial Scheduled Monthly Payments," the agreement states: "as of May 1, 2010, the scheduled monthly payment will be in the amount of U.S. $1,906.09. The scheduled monthly payment may change on that day of every twelfth month thereafter …" Compl. Ex. B at ¶ 3. On its face, this language clearly suggests that the *entire* monthly payment owed by plaintiff during the first year following the modification would be $1,906.09. Defendants point to paragraph 9 of the agreement, which states: "Except as otherwise specifically provided in this Agreement, the Note and Security instrument remain unchanged …" *Id.* ¶ 9. According to defendants, this language demonstrates that the Deed of Trust's Escrow Items provision survived the modification. However, as the modification

16

agreement does not indicate that the "scheduled monthly payment" of $1906.09 includes only principal and interest or makes *any* reference to Escrow Items, paragraph 9 creates an ambiguity which must be construed in favor of plaintiff. *Consul Ltd.,* 802 F.2d at 1149. Plaintiff would NOT have knowingly agreed to pay more than $3,700 per month when he requested a loan modification while his monthly payments were $2,531. *See* Compl. ¶ 52 See Also Declaration of Kurt K. Robinson. This clearly constitutes a material factual dispute. In a contract dispute concerning factual disagreement over whether the agreed terms were met, not simply a dispute over interpretation of the contract, summary judgment is not proper. *United Ass'n Local 38 Pension Trust Fund v. Aetna Casualty & Sur. Co*., 790 F.2d 1428 (9th Cir.1986.).

## VI. NEGLIGENCE

"Special circumstances arise when the lender's actively participates in the financed enterprise beyond the domain of the usual money lender. '*Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1153 (E.D.Cal. 2010) (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980)). As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. . . . Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Ansanelli v. JPMorgan Chase Bank, N.A.,* No. 10-03892, 2011 WL 1134451, at 8 (N.D. Cal. Mar. 28, 2011) (quoting *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991)).

### A.    Defendants Owe a Duty to Plaintiff

The recent holding of *Sanquinetti*, *Morgan,* and *Armstrong* do not relieve defendants of a duty to borrowers under a negligence theory. In each of these cases the application for loan

17

1   modification had not progressed to a concrete stage, in the instant case defendants admit in their

2   pleadings and declarations that the loan modification was in place. (See Declaration of

3   Leon at p5 lines 8-10). Each of these cases was decided on a Motion to Dismiss.

4   See Exhibit A- Declaration of Kurt Robinson.

5

6       In Sanguinetti Defendants filed a Notice of Non-Opposition because Plaintiff had not

7   responded to the motion to dismiss by the February 7 deadline. Plaintiff's counsel claimed he had

8   not received the motion and asked the Court to continue the briefing schedule on the motion to

9   dismiss. In that complaint, Ms. Sanguinetti claimed that Defendants had misled her into entering

10  an unsustainably expensive adjustable-rate mortgage ("ARM"), despite knowing that her income

11  was below what was reasonable (and in fact falsifying her income information in the lending

12  documents). The facts are dissimilar to the case at bar.

13

14      In Armstrong et al v. Chevy Chase Bank, Plaintiff contacted Chevy Chase and were

15  informed that they could only get a loan modification if they could bring their loan payments

16  current. Plaintiffs then paid Chevy Chase $13,500 in a lump sum payment to cure the default, but

17  were offered a forbearance plan instead of a modification as is the case here.

18

19      In determining the existence of a duty of care, a court may consider: "(1) the extent to

20  which  the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to

21  him, (3)  the degree of certainty that the plaintiff suffered injury, (4) the closeness of the

22  connection  between the defendant's conduct and the injury suffered, (5) the moral blame

23  attached to the defendant's conduct, and (6) the policy of  preventing future harm."

24      Here as, in *Ansanelli,* BA went beyond its role as a "silent" lender in its dealings with

25  plaintiff. *Ansanelli,* 2011 WL 1134451, at *8. In that case, the court found a duty of care

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

where the bank defendant offered the plaintiffs a trial modification plan, then reneged on a promise to modify the plaintiffs' loan and reported the loan as past due despite the fact that plaintiffs made proper payments, damaging their credit rating. *Id.*

Similarly in the case before the court, BA executed and breached the modification agreement, then engaged in a series of contradictory and somewhat misleading communications with plaintiff—in person, in writing, and by phone— regarding the status of his loan. Under such circumstances, it was entirely foreseeable that BA's conduct could result in damage to plaintiffs' credit rating or a decrease in the value of his home. *Compare Ottolini v. Bank of America,* No. 11-0477 EMC, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19, 2011).

Accordingly, the court should deny the motion for Summary Judgment as to plaintiffs negligence claim.

**B.      Wrongful Foreclosure under California Civil Code Sections 2923.5 and 2924 (Sixth and Twelfth Causes of Action)**

Plaintiff's wrongful foreclosure claim is based on alleged violations of California Civil Code sections 2923.5 and 2924, which impose procedural requirements on parties seeking to initiate non-judicial foreclosure proceedings. "Because non-judicial foreclosure is a drastic sanction and a draconian remedy, [t]he statutory requirements must be strictly complied with." *Anolik v. EMC Mortgage Corp.,* 128 Cal. App. 4th 1581, 1588 (Cal. Ct. App. 2005) (internal citations and quotation marks omitted).

**1.      Section 2923.5**

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

Section 2923.5 obligates a party to contact a borrower by phone or in person at least 30 days before filing a notice of default in order to "explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a) (2). The statute also requires a notice of default to include "a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower" or "has tried with due diligence to contact the borrower as required by this section." Cal. Civ. Code § 2923.5(b). "The right conferred by section 2923.5 is a right to be contacted to `assess' and `explore' alternatives to foreclosure prior to a notice of default." *Mabry,* 185 Cal. App. 4th at 225. "The *only* remedy provided [for a violation of Section 2923.5] is a postponement of the sale before it happens." *Id.* at 235 (emphasis in original) Plaintiff alleges that defendants failed to "interact" with him as required by Section 2923.5 before filing the notice of default on August 3, 2011. Compl. ¶ 135.   The defendants filed the notice without addressing his repeated complaints by plaintiff that BA had unilaterally and surreptitiously changed the terms of the modification agreement. The fact that plaintiff's loan had been modified more than a year earlier has little or no bearing on whether defendants were in compliance with Section 2923.5 *at the time the notice was issued.* (*See* ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE[Re Docket No. 5]  *(*Judge Whyte Motion to Dismiss)

The California Court of Appeal has explained, "compliance with section 2923.5 is necessarily an individualized process. After all, the details of a borrower's financial situation and the options open to a particular borrower to avoid foreclosure are going to vary, sometimes

widely, from borrower to borrower." *Id.* Given that it appears to have been clear by the summer of 2011 that a determination of the parties' obligations under the modification agreement was in order, Section 2923.5 put the onus on the bank to clarify the status of plaintiff's loan before filing a notice of default. Instead, defendants have admitted that they unilaterally changed the terms of the loan, invited plaintiff to a meeting to discuss the issue, and then recorded a notice of default before the meeting occurred. Such conduct does not comply with defendants' obligation to "*communicate* about a borrower's situation and the options to avoid foreclosure." All of these facts are support by declarations and the record *Mabry,* 185 Cal. App. 4th at 224 .  Accordingly, the court should deny the motion for Summary Judgment.

## 2.    Section 2924

Cal. Civ. Code § 2924(a) (1) requires a notice of default to "set [] forth the nature of each breach actually known to the beneficiary." A valid notice of default "must contain at least one correct statement of a breach of an obligation the deed of trust secures. Moreover, the breach described in the notice of default must be substantial enough to authorize use of the drastic remedy of non-judicial foreclosure. If a notice of default does not satisfy these requirements, then the notice is invalid and the lender cannot exercise the power of sale based on that notice." *Anolik,* 128 Cal. App. 4th at 1589. A notice of default is not void under Section 2924 where it contains only "slight procedural irregularit[ies]" which result in no prejudice to the plaintiff. *Knapp v. Doherty,* 123 Cal. App. 4th 76, 94 (Cal. Ct. App. 2004) (premature mailing of sale notice did not justify setting aside sale where borrowers had adequate notice of sale date); *Pantoja v. Countrywide Home Loans, Inc.,* 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

The notice of default is invalid because it misstated the amount owed under the deed of trust and was "disputed in a timely manner." Compl. ¶ 185.  The California Court of Appeal has held that a trial court may enjoin a *pending* foreclosure sale where the notice of default upon which the sale is predicated is defective. *See Miller v. Cote,* 127 Cal. App. 3d 888, 894 (Cal. Ct. App. 1982); *Anolik,* 128 Cal. App. 4th at 1601. Under defendants' logic, even if a notice of default were plainly invalid, a borrower would have to wait until the subject property was sold in order to sue. Such a requirement would be both extremely inefficient and an unnecessary drain on the parties' resources. In addition, the complaint contains allegations of prejudice resulting from the recording of the notice, including impairment of plaintiff's credit rating and a subsequent increase in his borrowing costs. Compl. ¶¶ 157; 185. Accordingly, the court should deny the motion for summary judgment against plaintiff's claim under Section 2924.

## C.    TILA Claim (Tenth Cause of Action)

Plaintiff's TILA claim alleges that defendants failed to provide a "Truth in Lending" statement or disclose certain terms of the modification agreement when it was executed in 2010. *See* Compl. ¶ 174. The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The statute requires, among other things, disclosure of finance charges, the "cost of credit as a yearly rate," and information about adjustable interest rates. *See* 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18(e) ("Regulation Z"). "An adjustment to the interest rate with or without a corresponding adjustment to the payment in a variable-rate transaction … is an event requiring new disclosures to the consumer." 12 C.F.R. 226.20. *See* ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE[Re Docket No. 5]

The nature of BA's relationship to the subject loan is a question of fact that should be determined on summary judgment. The complaint sufficiently establishes that the bank "owned" plaintiff's mortgage within the meaning of TILA. BA "took over" Countrywide's Home Loan portfolio between June 2009 and June 2010 that all of Countrywide's assets and liabilities were "transferred" to BA, and that Countrywide subsequently "ceased to exist." Compl. ¶ 33-37. As there is no question that Countrywide was the original owner of plaintiff's loan, these assertions strongly suggest that BA "acquir[ed] legal title to [plaintiff's] debt obligation." 12 C.F.R. 226.39(a) (1). Furthermore, it is undisputed that in April 2010, BA and plaintiff executed a contract that substantially modified the terms of the underlying loan, including an adjustment to plaintiff's monthly payments and interest rate.

### D.       Declaratory Relief (Eleventh Cause of Action)

Plaintiff seeks a judicial determination of the parties' obligations under the modification agreement, and a declaration of "who owns [the] subject property." Compl. ¶ 183. When a party seeks a declaratory judgment, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).Plaintiff's allegations have raised substantial questions as to the status of plaintiff's loan, and consequently, whether defendants have a right to foreclose on the subject property. Accordingly, the court should exercise its "unique and substantial discretion in deciding whether to declare the rights of litigants" and

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

1    denies the motion to for summary judgment as to plaintiffs claim for declaratory relief.

2    *MedImmune,* 549 U.S. at 136 (internal citations omitted).

3

4        **F.    Punitive Damages**

5        It was clear by the summer of 2011 that a determination of the parties' obligations under

6    the modification agreement was in order, Section 2923.5 put the onus on the bank to clarify the

7    status of my loan before filing a notice of default. Instead, defendants have admitted that they

8    unilaterally changed the terms of the loan, they   invited   plaintiff to a meeting to discuss the

9    issue, and then recorded a notice of default before the meeting occurred.  BA executed and

10   breached the modification agreement, then engaged in a series of contradictory and somewhat

11   misleading communications with plaintiff—in person, in writing, and by phone— regarding the

12   status of his loan. The statements by Wendy McKnight of Recontrust indicating that Plaintiff's

13   correspondence would be forwarded to BA for "review and response;" was false and malicious.

14   The statement by Nina Hernandez of BA indicating that she would research issues regarding the

15   modification agreement and attempt to postpone the initiation of foreclosure proceedings was a

16   malicious attempt to keep plaintiff from pursing his legal remedies in order to allow BA to sale

17   his home. BA's conduct   resulted in damage to his credit rating and a decrease in the value of his

18   home and lead him to be depressed and suicidal. Defendants failed to "interact" Plaintiff as

19   required by Section 2923.5 before filing the notice of default on August 3, 2011. Defendants

20   filed the notice without addressing my repeated complaints that BA had unilaterally and

21   surreptitiously changed the terms of the modification agreement. Defendants never actually

22   attempted to determine if Plaintiff was actually in default at the time the notice was issued.

23   Further, as the declaration indicates that it was executed in "Richardson, TX" while the subject

24

25

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

property is located in Fremont, CA, the document's credibility is suspect and demonstrates that Defendants acted with malice.

## VII.  CONCLUSION

The evidence Plaintiff presented above raises genuine issues of material fact on all aspects of the Defendants' defense. Plaintiff respectfully requests the Court to deny Defendants' Motion for Summary Judgment or Summary Adjudication.

Dated:  November 15, 2013                    Respectfully submitted,


                                             By: /s/*Kurt K. Robinson*
                                             In Pro Per

**PROOF OF SERVICE**

I, Virginia Robinson, declare that:

      I am over the age of 18 years.  My address is 4681 Deadwood Drive, Fremont, California 94536.

      On **November 15, 2013**, I caused to be served the **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

on the parties below as follows:

Justin D. Balser, Esq.                   Jamie Roth, Esq.
AKERMAN SENTERFITT LLP     AKERMAN SENTERFITT LLP
725 South Figueroa Street, 38th Floor   1400 Wewatta Street, Suite 500
Los Angeles, California  90017-5433    Denver, Colorado  80202
T:  213-688-9500                      T:  303-260-7712
Email:  justin.balser@akerman.com     Email: jamie.roth@akerman.com

☐      (MAIL) I placed the envelope for collection and mailing through the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐      (OVERNIGHT DELIVERY) I deposited in a facility regularly maintained by Federal Express, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐      (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provide them to a professional messenger service for service.  A separate Personal Proof of Service provided by the professional messenger service will be filed under  separate cover.

☐      (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission, which I printed out is attached.

☐      (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I    caused the documents to be sent to the persons at the e-mail addressed listed.  I did not    receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494

x        (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail addresses(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1).  "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic fling. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1).  A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se.

x        I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 15, 2013, at Fremont, California.


_____Virginia Robinson_____                    /s/ *Virginia Robinson*_____
        (Type or print name)                                            (Signature)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUMMARY JUDGMENT**
CASE NO.CV 12-00494