UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KURT K ROBINSON,<br><br>    Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>    Defendants. | Case No. 12-cv-00494-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 50 |

In this action for claims related to a residential foreclosure, Defendants move for summary judgment on each of the remaining claims in the case. Plaintiff Robinson, proceeding pro se, opposes the motion. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

I.   **BACKGROUND**

    A.   **The Parties, Claims, and Procedural History**

Plaintiff Robinson brings this action against Defendants Bank of America, N.A., Countrywide Bank (collectively "BANA"), and ReconTrust Company, N.A. ("Recontrust") for claims arising out of the initiation of foreclosure proceedings on a residential property owned by Robinson, which is located in Fremont, California. ECF No. 1.

Robinson filed this action in Alameda County Superior Court on November 29, 2011, and Defendants removed it on January 31, 2012. ECF No. 1. Robinson asserts the following claims in the complaint: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud; (4) intentional misrepresentation; (5) negligence; (6) violations of California Civil Code sections 2923.5 and 2924; (7) violations of California Business and Professions Code section 17200; (8) violations of the Rosenthal Fair Debt Collection Practices Act; (9) accounting; (10) violations of the Truth in Lending Act ("TILA"); (11) declaratory relief; (12) wrongful

foreclosure; (13) cancellation of the deed of trust; and (14) promissory estoppel.

Before the action was reassigned, the Court dismissed several of Robison's claims on Defendants' motion. ECF No. 28. The only claims currently at issue are ones for (1) breach of contract; (2) negligence; (3) violations of California Civil Code sections 2923.5 and 2924; (4) violations of California Business and Professions Code section 17200 in connection with violations of sections 2923.5 and 2924; (5) violations of TILA; and (6) declaratory relief.

**B.    Facts**[1]

Robinson is a "trial attorney." Robinson Dep. at 8, ECF No. 52. Robinson refinanced his home loan on January 6, 2005, obtaining a $416,250 loan ("the loan") from America's Wholesale Lender, Inc. ("AWL"). Leon Decl. ¶ 8 & Ex. 2. Robinson's refinanced loan terms were set forth in a promissory note ("the note"), the repayment of which was secured by a deed of trust ("the deed of trust"), which was recorded against Robinson's home. Id.

The originating lender was AWL, which also does business as Countrywide Home Loans, Inc. ("Countrywide"). Id. ¶ 8. Countrywide Home Loans Servicing was the original servicer of the loan. Id. ¶ 9. On April 27, 2009, Countrywide changed its name to BAC Home Loans Servicing, LP. Id. Bank of America, N.A., is the successor by merger to BAC Home Loans Servicing, LP, and the current servicer of the loan. Id. ¶ 9. The current owner of the debt is Bank of New York as trustee for the CWAB2005-01 Trust.[2] Id.

The deed of trust requires Robinson to pay all "escrow items." These items include property taxes and mortgage insurance premiums. Leon Decl., Ex. 2 ¶ 3. If a borrower fails to pay these escrow items directly, the lender will pay these items on the borrower's behalf to protect the lender's interest in the property. Id. ¶¶ 3, 9. The amounts advanced by the lender for escrow

---

[1] The Court GRANTS Defendants' request for judicial notice of certain instruments and recorded documents pertaining to the loan. See ECF No. 51.

[2] The original beneficiary under the deed of trust was Mortgage Electronic Registration Systems, Inc., ("MERS"). Leon Decl. ¶ 8 & Ex. 2. The original trustee under the deed of trust was CTC Real Estate Services. Id. MERS then substituted ReconTrust Company, N.A. ("ReconTrust") in as trustee, and assigned its beneficial interest to the Bank of New York Mellon as Trustee for the Benefit of the Certificateholders of CWABS 2005-01, Inc. ("BNYM"). RJN Ex. 1; Leon Decl. ¶ 10 & Ex. 3.

items then become additional debt secured by the deed of trust and bear interest at the same rate as the borrower's principal.  These amounts are payable, with interest, upon notice from lender requesting such payment.  Id. ¶ 9.

On December 21, 2006, Countrywide Home Loans Servicing sent Robinson a letter notifying him that his property taxes were delinquent and stating that if he did not provide evidence that his property taxes had been paid, Countrywide would begin paying all delinquent taxes and create an impound account on Robinson's behalf to ensure the timely payment of all future taxes.  Id. ¶ 11 & Ex. 4.  The letter further stated that Robinson's monthly payments would significantly increase to reimburse Countrywide for the tax payments and to collect for upcoming tax bills.  Id.

On December 3, 2007, Robinson received a similar letter, again notifying him that his property taxes were delinquent.  Id. ¶ 12 & Ex. 5.  Beginning in June 2009, Robinson was still failing to pay his property taxes.  Id. ¶ 12.  BANA, which had begun servicing Robinson's loan at this point, began paying property taxes on Robinson's behalf.  Id.  This triggered the creation of an escrow account separate from the principal and interest already owing.  Id.

By March 2010, a notice of default was recorded against the property.  RJN, Ex. 2; Leon Decl. ¶ 14.  Prior to the notice of default being recorded, Robinson called BANA requesting to be reviewed for a loan modification.  Leon Decl. ¶ 3.  In April 2010, Robinson was approved for a loan modification, which modified his obligations such that his "scheduled monthly payment" would total $1,906.  Id. ¶ 15 & Ex. 6 ¶ 3.  When Robinson's loan modification was implemented, the total negative escrow account balance created by Countrywide and BANA's payment of his taxes totaled $20,897.84.  Id. ¶ 16.

Later in 2010, Robinson tried to make monthly payments of $1,906.09 in accordance with the loan modification, but BANA rejected such payments on the ground that the amount due included not only the $1,906.09 for principal and interest, but also $1,842.27 for the escrow account balance, for a total of $3,748.39 per month.  Id. ¶¶ 17, 18.  By November 2010, Robinson began to contact BANA regarding its failure to accept his payments of $1,906.09.  Id. ¶ 22. BANA told Robinson that the loan modification payments were for interest and principal only,

and that the modification did not affect the negative escrow balance. Id. ¶ 20.

On August 3, 2011, another notice of default was recorded. RJN, Ex. 3; Leon Decl. ¶ 25, & Ex. 9. By this time, the amount in arrears had increased to $48,776.45. Id. A notice of trustee's sale was recorded on November 10, 2011, setting a sale date for December 2, 2011. RJN, Ex. 4. Robinson filed this action shortly thereafter, on November 29, 2011. No sale has yet gone forward. Roth Decl. ¶ 12, Ex. 2 at 57:4-14.

### C. Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1332.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If

4

the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id. "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### III. DISCUSSION

#### A. Breach of Contract

Robinson alleges that Defendants breached the note and deed of trust by failing to properly apply his payments to the note.   Compl. ¶ 77.  Robinson also avers that a "valid contract for a loan modification existed" between him and Bank of America. Id.

In California, a claim for breach of contract requires a plaintiff to establish: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff. See Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2009).

Defendants move for summary judgment on this claim on the ground that Robison failed to perform under the deed of trust, because he failed to pay the "full" amount owed per month under the loan modification agreement, which includes the outstanding escrow amounts. Defendants contend that the loan modification altered the monthly payments required to pay off the outstanding principal and interest only, but it did not affect the negative escrow account balance. As such, the loan modification agreement did not release Robinson from his obligation to make monthly payments on the outstanding escrow amounts. To support this contention, Defendants

rely on language in the loan modification document providing that "the Note and Security Instrument will remain unchanged." ECF No. 50 at 6.

Robinson responds that the loan modification agreement is ambiguous as to whether he continued to be obligated to pay the negative escrow amounts after the loan modification became effective, and that any such ambiguities must be resolved against Defendants. ECF No. 54.

In their reply, Defendants contend that Robinson's argument as to the ambiguity of the loan modification agreement is irrelevant to the resolution of their summary judgment motion, because Robinson's breach of contract claim is premised on the breach of the note and the deed of trust, not the loan modification agreement.

The Court concludes that Defendants' summary judgment motion must be denied. First, the Court rejects the notion that Robinson's claim does not encompass potential breaches of the loan modification agreement. The loan modification agreement expressly provides that it "amend[ed] and supplement[ed]" the note and the deed of trust. Leon Decl., Ex. 6, ECF No. 53. So the loan modification agreement is a part of the note and the deed of trust.

Second, Defendants' motion is predicated on the idea that Robinson remained obligated to pay the outstanding escrow amounts even after he entered into the loan modification agreement. This premise is not supported by the language of the loan modification agreement. In fact, paragraph 1 of the loan modification agreement suggests that the escrow amounts could have been consolidated into the principal as part of the loan modification process. It provides that the amount payable under the loan modification agreement is $435,678.36, which consists of amounts to be capitalized into the principal, "*which may include*. . . any past due principal payments, interest, *escrow payments*, and fees and/or costs ("Unpaid Amounts")." Leon Decl., Ex. 6 ¶ 1, ECF No. 53 (emphasis added). The use of the words "which may include" without any further clarification creates an ambiguity as to whether past due escrow payments were capitalized into the principal. If those past obligations had been capitalized, then Robinson's tender of monthly payments in the amount of $1,906.09 would have complied with the terms of the loan modification agreement.

In light of this contractual ambiguity, summary judgment is inappropriate. See United

1   States v. Contra Costa Cnty. Water Dist., 678 F.2d 90, 91 (9th Cir. 1982) (holding that

2   "[s]ummary judgment is appropriate only if the contract is unambiguous" and that the question of

3   whether contractual language is ambiguous is one of law).

### B.     Negligence

Robinson alleges that Defendants owed him a duty to exercise reasonable care and skill with respect to the loan. Compl. ¶¶ 129, 131. He further avers that Defendants breached this duty in improperly servicing the loan modification agreement. Id. ¶ 130.

To state a claim for negligence under California law, a plaintiff must plead sufficient facts to show "(1) duty; (2) breach; (3) causation; and (4) damages." Ileto v. Glock Inc., 349 F.3d 1191, 1203 (9th Cir. 2003) (citation omitted).

Defendants move for summary judgment on this claim on the ground that they do not owe a duty to Robinson and that Robinson has no evidence to show that he was damaged by their alleged breach of any duty they owed him. ECF No. 50 at 7.

Robinson responds that servicers owe borrowers a duty of care, and that BANA owed him such a duty because it "executed and breached the modification agreement[.]" ECF No. 54 at 19.

The Court concludes that Defendants are entitled to summary judgment on this claim, because no genuine issue exists as to whether they owe him a duty of care.

"The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." Nymark v. Heart Fed. Savings & Loan Assn. 231 Cal. App. 3d 1089, 1095 (1991). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money . . . Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." Id. at 1096 (citations and quotation marks omitted). Whether a duty to use due care exists in a particular case is a question of law to be resolved by the court. Aspiras v. Wells Fargo Bank, N.A., 219 Cal. App. 4th 948, 963 (Cal. Ct. App. 2013).

Robinson's negligence claim is premised on the notion that Defendants owe him a duty of care by virtue of having offered, entered into, and serviced the loan modification agreement. This

notion has been squarely rejected by the California Court of Appeal. In Aspiras v. Wells Fargo, that court held that financial institutions do *not* owe a duty of care to borrowers in connection with loan modifications. Id. The Court noted that the "general rule" is that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as mere lender of money." Id. (citation omitted). The Court then reasoned that "offering loan modifications is sufficiently entwined with money lending so as to be considered within the scope of typical money lending activities[,]" because "[i]f money lending institutions were held to a higher standard of care by offering a service that could benefit borrowers whose circumstances have changed, the money lender would be discouraged from leniency and would assert their [sic] rights to reclaim the property upon the borrower's default." Id. at 964. The holding in Aspiras is sufficient to dispose of Robinson's argument that BANA owed him a duty of care.

Robinson relies on Ansanelli v. JP Morgan Chase Bank, N.A., Case No. 10-03892 WHA, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011), and its progeny for the proposition that offering a loan modification goes beyond the domain of a usual money lender. There, the court held that an entity that offers loan modifications owes a duty of care to the borrower because such offers constitute the requisite "active participation" that exceeds the scope of typical money lending. See id., 2011 WL 1134451 at *7. Because the holding in Ansanelli has been squarely rejected by the California Court of Appeal in Aspiras, because the issue in question is a matter of state law, and because the court in Aspiras supported its holding with a public policy rationale that this Court finds persuasive, the Court declines to follow the Ansanelli line of cases and concludes that BANA did not owe Robinson a duty of care based on the facts presented in this case.[3]

---

[3] This court is not alone in declining to follow Ansanelli. See, e.g., Sanguinetti v. CitiMortgage, Inc., 12-5424 SC, 2013 WL 4838765 (N.D. Cal. Sept. 11, 2013) ("Loan modifications are part of the lending process, and negotiating a lending agreement's terms is one of a bank's key functions."); Casault v. Fed. Nat. Mortgage Ass'n, 915 F. Supp. 2d 1113, 1130-31 (C.D. Cal. 2012) ("[M]any of the California district courts . . . have found that modifying the terms of a loan is intimately tied to Defendant's lending role").

8

The Court likewise concludes that Recontrust did not owe a duty of care to Robinson, because there is no evidence on the record showing that Recontrust, which is the trustee under the deed of trust, was involved in any money-lending activity that could give rise to such a duty.

Because the requisite duty does not exist, the Court need not consider the remaining elements of Robinson's negligence claim. Defendants' motion for summary judgment on this claim is GRANTED.

### C. Violations of California Civil Code Sections 2923.5 and 2924

#### 1. Section 2923.5

Robinson alleges that Defendants failed to "interact[]" with him before filing a notice of default as required by section 2923.5. Compl. ¶¶ 135-40.

Section 2923.5 obligates a party to contact a borrower by phone or in person at least 30 days before filing a notice of default in order to "explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a)(2). The statute also requires a notice of default to include "a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower" or "has tried with due diligence to contact the borrower as required by this section." Cal. Civ. Code § 2923.5(b). "The right conferred by section 2923.5 is a right to be contacted to 'assess' and 'explore' alternatives to foreclosure prior to a notice of default." Mabry v. Superior Court, 185 Cal. App. 4th 208, 225 (Cal. Ct. App. 2010). "Any 'assessment' must necessarily be simple—something on the order of, 'why can't you make your payments?' . . . Exploration must necessarily be limited to merely telling the borrower the traditional ways that foreclosure can be avoided . . . as distinct from requiring the lender to engage in a process that would be functionally indistinguishable from taking a loan application in the first place." Id. at 232. "The *only remedy* provided [for a violation of Section 2923.5] is a postponement of the sale before it happens." Id. at 235 (emphasis in original).

Defendants move for summary judgment on this claim on the ground that there is no evidence to show that they failed to satisfy their obligations under this statute. Defendants point to

9

admissible evidence showing that they contacted Robinson multiple times prior to executing the notice of default at issue, including Robinson's own deposition testimony, in which he admits that he communicated with BANA in the months leading up to the notice of default.[4]  See Leon Decl. ¶¶ 20-24 & Ex. 8; Robinson Dep. at 45, Roth Decl., Ex. 2.

In response, Robinson argues that Defendants failed to comply with section 2923.5 because they failed to "clarify the status of [his] loan" before filing the notice of default. ECF No. 54 at 20-21.  He points to no evidence in support of this contention, however.

The Court concludes that Defendants are entitled to summary judgment on this claim.  The evidence submitted by Defendants shows that they made the requisite contacts with Robinson to discuss alternatives to foreclosure, which is all that section 2923.5 requires.  Robinson has submitted no evidence to create a genuine issue of material fact with respect to this claim. Accordingly, Defendants' motion is GRANTED.

### 2. Section 2924

Robinson alleges that Defendants violated section 2924 by recording a notice of default that contains an incorrect amount owed and an incorrect interest rate.  Compl. ¶¶ 184-86. Robinson further avers that he was harmed by this violation because it negatively affected his credit score and increased his borrowing costs.  Id.

Section 2924 requires, among other things, that a notice of default "set[] forth the nature of each breach actually known to the beneficiary." Cal. Civ. Code 2924(a)(1).  A notice of default is not void under Section 2924 where it contains only slight procedural irregularities that result in no prejudice to the plaintiff.  See Knapp v. Doherty, 123 Cal. App. 4th 76, 94 (2004) (premature mailing of sale notice did not justify setting aside sale where borrowers had adequate notice of sale date); see also Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009) (rejecting request to invalidate sale based on allegation that notice of default failed to name the proper beneficiary).

---

[4] Robinson filed objections to this evidence in a document separate from his opposition brief. ECF No. 55.  Because this violates Civil Local Rule 7-3, the Court will not consider the objections.  See Civil L.R. 7-3 ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum.")

10

Defendants move for summary judgment on this claim on the ground that Robinson has no evidence to show that the amounts he owed on the loan were inaccurate as stated in the notice of default. Defendants argue that the amounts stated in the notice of default are correct because they reflect the amounts owed under the loan modification agreement, as well as the amounts owed in connection with the outstanding escrow items. They further contend that Robinson's theory of liability under section 2924 is based on a misunderstanding of his obligations under the loan modification agreement. In support of this argument, Defendants point to portions of Robinson's deposition testimony, in which he admits that his section 2924 claim is based on a reading of the loan modification agreement that would not require him to make monthly payments in connection with the outstanding escrow amounts. See Robinson Dep. at 44. Finally, Defendants argue that, even if the amounts stated in the notice of default were inaccurate, Robinson has no evidence to show that he was prejudiced by the error.

In his opposition, Robinson offers no additional information beyond what is alleged in his complaint.

The Court concludes that summary judgment on this claim must be denied. The amounts owed as stated on the notice of default are based on the assumption that Robinson was required to make monthly payments in excess of the monthly payment amount stated in the loan modification agreement. Because the Court already held that the loan modification agreement is ambiguous as to the total amounts that Robinson was required to pay, a genuine issue of material fact exists with respect to the accuracy of the amounts stated in the notice of default at issue. Accordingly, Defendants' motion for summary judgment is DENIED as to this claim.

**D.  Violations of California Business and Professions Code Section 17200**

Robinson alleges that Defendants violated section 17200, which is otherwise known as California's Unfair Competition Law, by violating California Civil Code sections 2923.5 and 2924. Compl. ¶¶ 155-157.[5]

---

[5] Robinson also alleges violations of section 17200 based on investment schemes, foreclosures, and the mortgage industry, but these claims were dismissed by the Court on May 29, 2012. ECF No. 28.

11

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 62 Cal.Rptr.3d 177, 185 (2007).

Defendants move for summary judgment on this claim on the ground that they did not violate the predicate foreclosure statutes.

Robinson did not offer any evidence or argument in his opposition with respect to this claim.

The Court concludes that Defendants' motion for summary judgment must be GRANTED to the extent that Robinson's claim is premised on violations of section 2923.5, because the Court has ruled in favor of Defendants with respect to the section 2923.5 claim. On the other hand, the Court concludes that Defendants' motion for summary judgment must be DENIED to the extent it is premised on violations of section 2924, as the Court has held that a genuine issue of material fact exists with respect to violations of that statute.

**E.    TILA**

Robinson alleges that Defendants failed to provide a "Truth in Lending" statement or disclose certain terms of the modification agreement when it was executed in 2010. See Compl. ¶ 174.

Defendants move for summary judgment on this claim on the ground that (1) TILA does not apply to loan modifications; (2) even if TILA did apply to loan modifications, this claim is time-barred with respect to the origination of the loan and the modification; and (3) loan servicers cannot be held liable for TILA violations.

In his opposition, Robinson does not address Defendants' arguments that TILA does not apply to loan modifications or that the claim is time-barred. Instead, he argues, purportedly in response to Defendants argument that servicers cannot be liable under TILA, that the "there is no question that Countrywide was the original owner of [his] loan." ECF No. 54 at 23.

The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid

12

the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The statute requires, among other things, disclosure of finance charges, the "cost of credit as a yearly rate," and information about adjustable interest rates. See 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18(e) ("Regulation Z"). TILA disclosures are required at loan origination and after a refinancing, but a lender is not required to provide additional TILA disclosures when the parties agree to a "change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency," and the rate on the loan did not increase. See 12 C.F.R. § 226.20(a)(4); see also Beck v. Wells Fargo Bank, Nat. Ass'n, Case No. 11-cv-663, 2011 WL 6217345, at *4 (N.D. Cal. Dec. 14, 2011) ("Loan modifications and workout agreements do not trigger new TILA obligations[.]").

Here, new TILA disclosures were not required as a result of the loan modification agreement, because the change in the payment schedule did not involve a rate increase. Accordingly, because Defendants cannot be liable under TILA in connection with the loan modification agreement, their motion for summary judgment is GRANTED as to this claim.

### F.     Declaratory Relief

Robinson alleges that an actual controversy exists with respect to the rights and obligations of the parties under the loan modification agreement and seeks a declaration of "who owns [the] subject property." Compl. ¶ 183.

Defendants move for summary judgment on this claim on the ground that no controversy exists between the parties.

Robinson responds that his claims raise substantial questions as to the status of his loan and as to whether Defendants have a right to foreclose on the property.

"The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject." City of Cotati v. Cashman, 29 Cal.4th 69, 79 (Cal. 2002).

Because several claims have survived summary judgment, it is not the case that no actual controversy exists between the parties. Accordingly, Defendants' motion for summary judgment on this claim is DENIED.

/ / /

## IV. CONCLUSION

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. The motion is denied as to Robinson's claims for breach of contract, violations of California Civil Code section 2924, California Business and Professions Code 17200, as described above, and declaratory relief. The motion is otherwise granted.

**IT IS SO ORDERED.**

Dated: January 6, 2014

JON S. TIGAR
United States District Judge

14